## NAPOLEON LAROSE *vs.* MARK BERMAN.

### Androscoggin.    Opinion October 27, 1923.

*A person is liable for trespasses of agents or servants committed with his knowledge or consent, or if ratified by him, or done by his direction or instigation, or while acting within the scope of authority conferred by him.    Punitive damages permissible.*

The presiding Justice rightly instructed the jury as to what constituted a wilful trespass, not that the defendant would be liable for punitive damages in any event if his agent acted wilfully, but only in case the acts complained of were authorized by the defendant.

The master is not responsible as a trespasser, unless by direct or implied authority to the servant he consents to the wrongful act.    But if the master gives an order to a servant which implies the use of force and violence to others, leaving to the discretion of the servant to decide when the occasion arises to which the order applies, and the extent and kind of force to be used, he is liable, if the servant in executing the order makes use of force in a manner or to a degree which is unjustifiable.

It is a well-established principle of the common law, that in all actions for torts the jury may inflict what are called punitive or exemplary damages, having in view the enormity of the offense rather than the measure of compensation to the plaintiff.

On exceptions.    An action of trespass quare clausum.    The plaintiff for several years occupied as a tenant the second floor in a brick

block owned by defendant, situate on Main Street in Lewiston, the first or street floor being occupied by defendant and his son, as co-partners, as a boot and shoe store. Defendant claims that he retired from the partnership on January 13, 1922, dissolving the partnership, and that his son, Jacob, continued the business, occupying the store as his tenant. After the dissolution of the partnership, and, as defendant alleges without his knowledge, his son, Jacob, commenced to remodel the store, and went with a contractor into the tenement of plaintiff in his absence and against the protest of his wife, it is alleged, and broke five holes through the brick walls and put sixteen timbers in one room, twelve in another, and put the furniture in disorder. Plaintiff alleged that the son, Jacob, in committing the acts of trespass complained of, acted as the agent of the defendant, while the defendant contended that his son, Jacob, was not his agent, and that further he had no knowledge that this work was being done. Defendant excepted to an instruction by the court to the jury on the question of punitive damages, and also excepted to a refusal by the presiding Justice to give a requested instruction. Exceptions overruled.

The case is fully stated in the opinion.

*Frank A. Morey*, for plaintiff.

*Benjamin L. Berman and Jacob H. Berman*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

HANSON, J.    This is an action of trespass quare clausum and comes to the Law Court on defendant's exceptions.

The defendant had for many years owned a four-story brick building on Main Street, Lewiston. The street floor was occupied as a boot and shoe store and the three floors above by three families. The plaintiff with his family occupied the whole of the floor directly over the store and had been the tenant at will of the defendant for four years.

Until January 13, 1922, the defendant occupied the street floor in partnership with his son, Jacob. On this 13th day of January, they dissolved partnership, the defendant retiring from and the son remaining in the business. Thereafterwards, the son, Jacob, occupied the street floor as the tenant of the defendant. The plaintiff ever since his tenancy was in the habit of bringing his rent to the store

downstairs and continued so to do after the dissolution of January 13th, taking a receipt from whoever might be in the store at the time.

The defendant in the middle of June following, left Lewiston, going to Atlantic City, and did not return until August 13th. In the meantime, and during the absence of the defendant, the son Jacob, remodeled the front of the store. He employed a contractor and made all of the arrangements for the work. The contractor attempting to shore up the building, made preparation to insert timbers and beams through the front of the building and into the interior of the two front rooms of plaintiff's tenement, when he was denied permission by the plaintiff so to do. Whereupon the son entered personally the two rooms, moved the furniture about and directed the contractor to proceed with the work, which he did, thereby committing the acts of trespass alleged.

The declaration set forth the allegation that the acts of trespass were performed by *the agents* of the defendant, and also an allegation for punitive damages.

The presiding Justice submitted the following specific question to the jury: "If trespass was committed by defendant, was it committed wilfully?" This was answered in the affirmative.

The exceptions are two in number: First, to the instruction of the court in substance; that if the jury should find that the trespass was committed by the authorized agent, and if that agent acted wilfully the defendant would be liable for punitive damages.

Second, to the refusal of the presiding Justice to give the following requested instruction:—

"The defendant would not be subject to punitive damages if the acts of trespass were committed in this case by his servants or agents, unless the defendant authorized the acts, or unless they were within the scope of the authority to remodel the front of the store." The two exceptions are so related that they may be considered together.

The presiding Justice was instructing the jury as to what constituted a wilful trespass, not that the defendant would be liable for punitive damages in any event if his agent acted wilfully, but only in case the acts complained of were authorized by the defendant. Throughout the charge the presiding Justice again and again emphasized the necessity for the jury to find that the acts complained of must be found to be within the scope of the agent's authority. Some of the expressions follow:

"Was he, Jacob, the agent in whatever was done at that house of the defendant, his father?"

"I want you to pay your attention right directly to determining that one question, agency or no agency on the part of Jack Berman, for his father. If you find he was agent then the facts constitute a trespass. Then the question comes as to what the rights of the parties are there."

"If you find that the damage was wilfully and wantonly done, you have a right to go further. . . . . if you find that the trespass was committed by the defendant or by his authorized agent, acting for him." Then followed instruction in relation to punitive damages, which the court instructed the jury might be assessed, if they felt warranted in so doing. The presiding Justice in closing his charge instructed the jury that, "The plaintiff must as a part of his case, satisfy you by a fair preponderance of the testimony, that the relations between the defendant and his son were such that this was fairly in the scope of his agency, this entering in the way he did, doing those acts. . . . . That is a matter for you to decide, but it is law that the plaintiff must satisfy you that in the particular act in question, taking all the circumstances into consideration, the young man Jack Berman, was acting within the scope of his agency, that in handling all this property, including this going through the wall there, and putting these things in, he was within the scope of the actual authority of his father."

The charge is the only thing before us. It was very painstaking and clear upon the points raised, and was in harmony with settled law. The instruction as to punitive damages was correct. The presiding Justice had already covered the points raised in the second requested instruction, and of necessity had gone further and instructed the jury that "if they found that the damage was wilfully and wantonly done, you have a right to go further." It is very plain that the defendant was not injured or prejudiced by the refusal to instruct as requested.

That the defendant is liable for the act of his servant or agent under the facts and circumstances developed in the instant case is well settled. In *Howe* v. *Newmarch*, 12 Allen, 49, the rule controlling in cases such as this is stated in the following language: "The master is not responsible as a trespasser, unless by direct or implied authority to the servant he consents to the wrongful act. But if the master give

an order to a servant which implies the use of force and violence to others, leaving to the discretion of the servant to decide when the occasion arises to which the order applies, and the extent and kind of force to be used, he is liable, if the servant in executing the order makes use of force in a manner or to a degree which is unjustifiable. And in an action of tort in the nature of an action on the case, the master is not responsible if the wrong done by the servant is done without his authority, and not for the purpose of executing his orders, or doing his work. So that if the servant, wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another not within the scope of his employment, the master is not liable. But if the act be done in the execution of the authority given him by his master, and for the purpose of performing what the master has directed, the master will be responsible, whether the wrong done be occasioned by negligence, or by wanton or reckless purpose to accomplish the master's business in an unlawful manner." *Goddard* v. *Grand Trunk Ry. Co.*, 57 Maine, 202, and cases cited. *Hanson* v. *E. & N. A. Ry. Co.*, 62 Maine, 90. A person is liable for trespasses of agents or servants done with his knowledge or by his consent, given either before or after the act, or by his direction or instigation or acting within the scope of their authority conferred by him—so a master is liable if a trespass is the natural and probable result of orders given by him to his servant or if he ratifies a trespass committed by his servant or agent. 38 Cyc., 1040. The principal is liable to third persons in a civil suit for frauds, deceits, concealments, torts, negligence and other malfeasances and omissions of duty in his agent in the course of his employment, although the principal did not authorize, justify or participate in, or indeed know of such misconduct; or even if he forbade them or disapproved of them. In every such case, the principal holds out his agent as competent and fit to be trusted; thereby, in effect, he warrants his fidelity and good conduct in all matters of his agency. But although the principal is thus liable for torts and negligence of his agent, yet we are to understand the doctrine, with its limitations, that the tort or negligence occurs in the course of the agency. For the principal is not liable for the torts and negligence of his agent in any matter beyond the agency, unless he has expressly authorized them to be done, or he has subsequently adopted them for

his own use and benefit.   *Stickney* v. *Munroe,* 44 Maine, 195, citing Storey's Agency, Section 452, 453.   See *Leavitt* v. *Seaney,* 113 Maine, 119.

As to punitive damages.   In *Goddard* v. *Grand Trunk Ry.,* supra, this court held, "that the right of the jury to give exemplary damages for injuries wantonly, recklessly, or maliciously inflicted, is as old as the right of trial by jury itself; and is not, as many seem to suppose, an innovation upon the rules of the common law.   It was settled in England more than a century ago."   In *Day* v. *Woodworth,* 13 Howard, 363, the court say:   "It is a well established principle of the common law, that in all actions for torts the jury may inflict what are called punitive or exemplary damages, having in view the enormity of the offense rather than the measure of compensation to the plaintiff."   "We are aware," the court continues, "that the propriety of this doctrine has been questioned by some writers; but if repeated judicial decisions for more than a century are to be received as the best exposition of what law is, the question will not admit of argument."   See *Pike* v. *Dilling,* 48 Maine, 539, for full review of authorities.

The entry will be,

*Exceptions overruled.*